IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **MIDDLESEX INSURANCE COMPANY** ) | |
| ) | |
|     Plaintiff   ) | |
| ) | |
| v.  ) | No.: 2:21-cv-02524-JTF-cgc |
| ) | Jury Demanded |
| ) | |
| **COX'S PARADISE, LLC**  ) | |
| ) | |
| ) | |
|     Defendant | |

**MEMORANDUM IN SUPPORT OF
MOTION TO VACATE APPRAISAL AWARD AND TO ABATE**

COMES NOW the Defendant, Cox's Paradise, LLC, by and through counsel, and submits the following Memorandum in Support of its Motion to Vacate Appraisal Award and to Abate:

**I. INTRODUCTION**

This is a first-party insurance action. The property insurer, Middlesex Insurance Company ("Middlesex"), and the insured Cox's Paradise, LLC have a dispute regarding coverage, causation, and payment for the subject loss. Middlesex filed a Declaratory Action alleging there was no coverage and Cox's countersued. Even though coverage/causaton were in dispute, the parties mutually agreed to submit the loss, via an <u>Unopposed</u> Motion to Compel Appraisal (D.E. 44), to appraisal for an amount of loss determination. As stated in the Memorandum in

1

Support of the Unopposed Motion to Compel Appraisal, "Finally, an "appraiser's authority is limited to the authority granted in the insurance policy or granted by some other express agreement of the parties." Merrimack, 59 S.W.3d at 152. **Here, the appraisal provision does not allow the appraisers to make final determinations on the causation, scope, or liability under the policy, just the amount of the loss**. **In this case, Cox is not seeking to resolve any causation or coverage issues via appraisal and Middlesex has reserved the right to raise coverage because, even "[i]f there is an appraisal, we still retain our right to deny the claim**." (See Policy, Ex# 1-1, at Page # 19)." See (D.E. 44 pg. 5)(emphasis supplied). Given the arguments in the Unopposed Motion, this Honorable Court entered the Order compelling Appraisal (D.E. 45) and the matter was stayed. Due to issues associated with an Umpire, a new Umpire was selected and the matter stayed until appraisal could be completed.

After the Umpire issue was resolved, on or abour April 11, 2025, Umpire Linville issued his Appraisal Award setting the amount of loss at $0.00! See Exhibit "A". Thereafter, Defendant's attorney was significantly injured resulting in an extension of time of all deadlines, but during a status conference with this Court it was discussed that, more likely than not, Defendant would be filing a Motion to Vacate. In an effort to avoid filing a Motion to Vacate (also due in part to a delay given Defendant counsel's limitations) and consistent with the Court's Order, the parties scheduled/attended mediation in the hopes that the case would settle without the need to file this Motion. Unfortunately, no such settlement could be

2

achieved at mediation.

Clearly, the Umpire and Middlesex's Appraiser misunderstood the nature of this appraisal as the Memorandum stated, "**the appraisal provision does not allow the appraisers to make final determinations on the causation, scope, or liability under the policy, just the amount of the loss".** Yet, that is exactly what they/he did.

## II. FACTS

**A. MIDDLESEX POLICY AND APPRAISAL CLAUSE**

Cox's commercial property at issue is insured by Middlesex against property damage (the "Policy"). The Policy is an "all-risk" policy, meaning that the Policy covers all risks of direct physical loss or damage to the Insured Premises unless the loss is specifically excluded or limited by the Policy. Concerning Appraisal, the Policy provides:

> If we and you disagree on the **value of the property**, **or the amount of loss**, either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
> Each party will:
> a.   Pay its chosen appraiser; and
> b.   Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, **we still retain our right to deny the claim.**

(Doc. 44-1, § E.2.)(emphasis added).

However, the appraisal that was conducted in this cause was not done in

accordance with the Policy. Instead, Plaintiff's Appraiser and the Umpire treated this as it was their job to determine causation/coverage for the loss and what areas they believed were damaged by the conditions noted above. Ultimately, the Umpire and the Appraiser for the insurer entered an Appraisal Award of $0.00. This is directly inopposite of what they appraisers/umpire were tasked to do as even before submitting the loss to appraisal, proving that the Appraisers/Umpire determined coverage/causation, Middlesex determined the amount of loss to the roof, through its contractor DE General, LLC, to be $682,567.23. See Exhibit "B" In that email, the insurance company stated, even though we do not think the loss is covered or caused by the peril, they acknowledge that the cost to replace the roof to be $682,567.23. See Exhibit "B". Cox disagreed and that was the basis/reason the parties entered into the appraisal process so that the Appraisers/Umpire could set the amount of loss for the entirety of the loss and then the parties could, if necessary (as sometimes the loss is just paid), litigate coverage/causation.

Per Umpire Linville, "[i]n order to determine an ACV/RCV number to award a thorough review of the evidence presented, including photographic documentation, expert reports, weather data, and consideration of industry standards, a determination was made that the evidence does not support that the building sustained damage directly attributable to the windstorm event on June 5, 2020; therefore, I have issued a zero-dollar award based on this. Please find the attached award." See Exhibit "C". That was not, respectfully, his role in the appraisal process.

4

Under this Appraisal Award, if no coverage/causation were found in Middlesex's favor, there would be no payment under the Policy. If, however, coverage/causation was found in Cox's favor, the parties would be bound to the amount of loss (in this case, for example, the amount of the roof) in the Appraisal Award. Without a specific amount of loss based on the damages found (not what the Umpire believes caused them or whether they were covered), with line items in a detailed estimate, the parties are unable to argue/litigate which items are covered/caused by the subject loss warranting payment, if any.

### III. LAW AND ARGUMENT

"A federal court sitting in diversity applies the substantive law of the state in which it sits." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ). Tennessee law presumes a contract is governed by the "law of the jurisdiction in which it was executed absent a contrary intent." *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 823 F. Supp. 2d 786, 801 (W.D. Tenn. 2011) (citing *Se. Tex. Inns Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (applying Tennessee law) ); *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). Here, this Court will apply Tennessee substantive law because the contract was executed in Tennessee, and there is no evidence of a contrary intent in the contract.

The Court's analysis begins with the Policy's language. "In general, courts should construe insurance contracts in the same manner as any other

5

contract." *Am. Just. Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). "The language of the policy must be taken and understood in its plain, ordinary, and popular sense." *Id.* (citing *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) ). In Tennessee, the guiding principle of contract interpretation "is to ascertain and give effect to the intent of the parties." *Clark v. Sputniks, LLC* , 368 S.W.3d 431, 441 (Tenn. 2012).

In 2001, the Court of Appeals of Tennessee noted that the purpose of an appraisal is to value the property loss and not to resolve disputes over coverage or causation issues. *See MerrimackMut. Fire Ins. Co. v. Batts,* 59 S.W.3d 142, 152-53 (Tenn. Ct. App. 2001). Specifically, the *Merrimack* Court defined the phrase "amount of the loss" to mean "the monetary value of the property damage," and found that the appraisal panel "did not have the prerogative to determine whether any particular loss claimed by [the insured] was caused by the tornado or whether [the insurer] was ultimately liable under its policy for the loss." *Id.* at 153. In other words, causation and coverage issues are properly left to the courts. *Id.; see also Harowitz,* 168 S.W. at 165.

Twelve years later, in *Artist Bldg. Partners v. Auto-OwnersMut. Ins. Co.,* 435 S.W.3d 202 (Tenn. Ct. App. 2013), the Court of Appeals emphasized the importance of policy language that grants or limits the authority provided to the appraisal panel, and therefore declined to overturn an appraisal award when the appraisal clause provided that a decision by the panel as to the amount of loss would be binding. *Id.* at 218 (reaffirming *Merrimack's* holding that the appraisal panel's

6

authority is "limited to the authority granted in the insurance policy or granted by some other express agreement of the parties").

Simply, if liability is disputed, an appraisal on the "amount of loss" would not "vest the appraisers with the authority to decide questions of coverage and liability." *Merrimack Mut. Fire Ins. Co.,* 59 S.W.3d at 152. In Tennessee, courts interpret insurance contracts by giving the policy's terms their natural and ordinary meaning. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). Generally, an "appraiser's authority is limited to the authority granted in the insurance policy or granted by some other express agreement of the parties." *Merrimack Mut. Ins. Co. v. Batts*, 59 S.W.3d 142, 152 (Tenn. Ct. App. 2001). Absent an express clause in the insurance contract, "appraisers have no power to decide coverage or liability issues." *Id.* at 152-53 (compiling cases). *E.g., Jefferson Ins. Co. v. Superior Court*, 475 P.2d 880, 883 (Cal. 1970); *Commonwealth Ins. Co. v. Soloman*, 119 A. 850, 853 (Del. 1923); *Opar v. Allstate Ins. Co.*, 751 So.2d 758, 761 (Fla.Dist.Ct.App. 2000); *St. Paul Fire Marine Ins. Co. v. Wright*, 629 P.2d 1202, 1203 (Nev. 1981); *Elberon Bathing Co. v. Ambassador Ins. Co.*, 389 A.2d 439, 446 (N.J. 1978); *Minot Town Country v. Fireman's Fund Ins. Co.*, 587 N.W.2d 189, 190 (N.D. 1998); *Kentner v. Gulf Ins. Co.*, 673 P.2d 1354, 1356 (Or.Ct.App. 1983); *Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App. 1996); *Domke on Commercial Arbitration* § 1:02, at 6-7. One court has suggested that disputed coverage and liability issues are best submitted to the courts before any dispute

7

regarding the amount of the loss is submitted to the appraisers. *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 469 (Mich.Ct.App. 1991).

"An appraiser's authority is limited to the authority granted in the insurance policy or granted by some other express agreement of the parties." *Merrimack*, 59 S.W.3d at 152. In the absence of an agreement to the contrary, the authority to decide disputes of liability and coverage lies in the courts, and not with the appraisers. *Id.* at 153; *Harowitz*, 168 S.W. at 165; *see also Pear Tree Props., LLC v. Acuity*, No. 3:16-cv-00551, 2017 WL 3674845 (M.D. Tenn. Aug. 25, 2017). The Policy's appraisal provision permits the appraisers and the umpire to decide the amount of loss, rather than issues of coverage or causation.

The plain language of Middlesex policy confines the role of the appraisers in determining the "amount of the loss." The questions presented to the appraisers and umpire seek determinations of value - What is the value of the property? How much money did the insured lose? The question at issue here in the umpire award, however, includes both value and causation.

In a case with an appraisal clause almost identical to the parties' agreement set out above, the Fourth Circuit held that parties are not bound by the appraiser's determinations of coverage issues. *High Country Arts and Crafts Guild v. Hartford Fire Ins.*, 126 F.3d 629, 634 (4th Cir. 1997). The North Carolina Supreme Court observed that "[a]s a general rule, the sole purpose of an appraisal is to determine the amount of damage . . . An Appraisal does not necessarily determine total amount due under the policy. . . Generally . . . whether the loss . . . was caused by a

8

covered risk is a question for the jury. Similarly, whether . . . the loss falls within a policy definition is a question of fact." *N.C. Farm Bureau Mut. Ins. Co., Inc. v. Sadler*, 711 S.E.2d 114, 117-18 (N.C. 2011) (quoting 15 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 210:42 (Dec. 1999)). The appraisal clause in *Sadler* explicitly barred the appraisers from interpreting the insurance policy or considering causation or coverage issues, but even without this explicit language the appraisers' consideration of any issue beyond the amount of loss is improper. *High Country*, 126 F.3d at 634.

In light of other courts' interpretation of similar language, the appraisers and the umpire did not have the prerogative to determine whether any particular loss claimed by Cox was caused by wind or hail or whether Middlesex was ultimately liable under its policy for the loss. As such, Umpire Linville essentially set his own scope of appraisal (notably with no statement made of what was appraised) with his own causation determination. The final responsibility for resolving disputes over those issues, assuming the parties cannot reach an agreement on their own, rests with the Courts. The umpire was not instructed to adjudicate the parties' disputes about whether certain damages are attributable to covered events and only appraise damages relating to those covered events. *See Fisher v. Am. Fam. Mut. Ins. Co.*, 2018 WL 10196066, at *5 (D. Colo. June 14, 2018) ("Nowhere in Colorado law or elsewhere have I found any support for the proposition that an *appraiser* determines what to appraise." (emphasis in original)); *see also McCaffrey v. Great Northern Insurance Company*, Case No. 18-cv-1052-WJM-KLM

9

(D. Colo. Jan. 29, 2021)(granting plaintiff's Motion to Vacate Appraisal Decision). Indeed, the disputes regarding coverage determinations are to be resolved by the Court and should not affect the Umpire's analysis. *See Summit Park Townhome Ass'n*, 100 F. Supp. 3d at 1104 ("legal determinations, including regarding coverage, are clearly outside the scope of the appraisal process").

Furthermore, appraisals should be itemized and detailed so that the Court or jury can determine coverage and causation for each discrete component of damages. *Ingram v. State Farm*, 2021 WL 6133771 (W.D. Tenn. 2021). In *Morrow v. State Farm Fire & Cas. Co.* 592 F. Supp. 3d 672, 677 (E.D. Tenn. 2022), the Court specifically noted that: " To that end, the appraisers in this case should take care to ensure that the appraisal is detailed and itemized. Following the appraisal, the Court will be able to decide issues of coverage and causation regarding the losses that State Farm maintains are not covered by the Policy, if it wishes to raise those arguments then." *Id.* The appraisal provided in addition to only appraising what they felt was covered, additionally only lists a valuation with no detail specificity.

Based upon this, Cox respectfully requests this Court enter an order vacating the Appraisal Award and to abate the action to allow for a second appraisal with a new Umpire and/or instructions to this Umpire to determine the amount of loss and the matter be abated until Appraisal can be completed. Altenatively, this Court could declare that the appraisal process is at its end, a second appraisal is not

10

warranted, and the parties should move forward with litigation with new agreed upon Scheduling Order.[1]

                                        Respectfully submitted,

**THE FARBER LAW FIRM**
ATTORNEY FOR PLAINTIFFS
MERRICK PLAZA
2199 PONCE DE LEON BLVD, SUITE 301
CORAL GABLES, FLORIDA 33134
TELEPHONE   (305) 774-0134
FACSIMILE    (305) 774-0135
PRIMARY: DFARBER@DFARBERLAW.COM
SECONDARY: MARIA@DFARBERLAW.COM
            PLEADINGS@DFARBERLAW.COM

BY:   /s/ *David S. Farber*
DAVID S. FARBER, ESQUIRE
Florida Bar No. 0370230
Admitted to the Western District

&

**SPRAGINS, BARNETT & COBB**
COUNSEL FOR PLAINTIFFS
312 E. LAFAYETTE STREET
JACKSON, TN 38301
TELEPHONE: 731-424-0461
E-MAIL: LEWISCOBB@SPRAGINSLAW.COM

BY:   */S/  Lewis Cobb*
      LEWIS COBB, ESQUIRE
      TBN: 005369

### CERTIFICATE OF SERVICE

      I, the undersigned attorney, do hereby certify that the foregoing document has been served upon the following counsel of record or parties pro se in

---

[1] The Tenth Circuit has held that "neither party may require a second appraisal where the first fails without his fault." *Norwich Union Fire Ins. Soc'y v. Cohn*, 68 F.2d 42, 44 (10th Cir. 1933). Instead, the parties' dispute simply moves to the courts as if no appraisal had been demanded in the first place. *Id.*; see also *Copper Oaks Master Home Owners Ass'n v. Am. Family Mut. Ins. Co.*, 416 F. Supp. 3d 1115, 1128 (D. Colo. 2019) (recognizing that neither side is obligated to proceed with a second appraisal after the initial appraisal was vacated)

11

this cause **ONLY BY ELECTRONIC TRANSMISSION** to the following:

**Seth T. Hunter, Esq.**
**Brenen Ely, Esq.**
**Lauren A. Wiggins, Esq.**
**Ely & Isenberg, LLC**
**3500 Blue Lake Drive, Suite 345**
**Birmingham, Alabama 35243**

This, 9th day of September, 2025.

s/ *David S. Farber*
DAVID S. FARBER, ESQUIRE
Certifying Attorney