---------- Forwarded message ---------

From: **Jon Linville** <jon@exactclaimsolutions.com>

Date: Fri, Apr 11, 2025, 11:26 AM

Subject: ⚖️ UMPIRE AWARD DECISION - Cox's Paradise, LLC v. Sentry [Job #66F348038]

To: Vince Perri <vince@eliteresolutions.com>, Dan Connell <dan.connell@usbcg.com>

Cc: ECS Claim Resolution Dept. <exact@jobnimbusmail.com>

**Attn: Vince Perri & Dan Connell**

**RE:   Appraisal Matter**

**Cox's Paradise, LLC v. Middlesex Insurance Company**

**Claim # 66F348038**

**Date of Loss: 6/5/2020**

**Cause of Loss: Windstorm**

**Location:  4224 Delp St**

**Memphis, TN 38118**

Dear Appraisers,

This communication documents the appraisal panel's umpire ruling regarding the disputed claim based on the differences of the alleged damages resulting from a windstorm event on June 5, 2020, at the property located at 4204 Delp St.

**Carrier's Appraiser Position:** Dan Connell conducted an on-site inspection and provided a Roof Assessment Report. This report details observed deficiencies, including improper installation and prior repair attempts, predating the date of loss and supported by aerial imagery analysis. Mr. Connell's professional opinion concluded that the roof did not

sustain wind or hail damage directly attributable to the June 5, 2020, event. Mr. Connell maintained his position throughout this process, reiterating that the failure of the seams prematurely is a result of improper installation and repair attempts and not a consequence of wind on the date in question.

**Insured's Appraiser Position:** Vince Perri did not provide any authored report and/or typical narrative position.  However, he provided documentation via a Google Drive link, including photographs, reports, invoices, the insurance policy, proof of loss, and multiple estimates, including a contractor repair estimate exceeding $6.7 million. Mr. Perri verbally communicated in our onsite meeting a position that "if" wind had lifted the seams and water got in, then the replacement of the roof should be considered.  Mr. Perri mentioned several times (in reference to Mr. Connell's stance on the seams) in our in-person meeting that what we were looking at was "subjective".  It appeared that Mr. Perri was alluding to the fact that if the seams were exacerbated due to wind, then any damages resulting from it should be considered.

**Evidence Review:**

- **Photographic Evidence:** The Photos provided by both appraisers depicted the roof's overall condition, highlighting seam separations, a displaced vent cap, and interior photos showing pools of standing water. The presence of dirt, debris, and vegetation within these seams suggested pre-existing conditions. A displaced vent cap was observed; however, given its position (found lying on the west side of the pipe going against the N-NE wind direction) and secured by one fastener, it indicated it may not have been adequately secured initially and given the direction in which it was laying suggests that this event did not displace it. Photos of pooling water on the interior were also reviewed, and it was discovered that the earliest metadata for the provided photos was dated August 22, 2020, over two months post-event.

- **Reports:** Reports from EDT Forensic Engineering & Consulting and USBCG (Dan Connell) concluded that no damage directly attributable to wind or hail from the June 5, 2020, event was sustained. Both reports noted installation deficiencies and prior repairs. A forensic weather report from Davis Nolan Consulting Meteorologist LLC indicated likely wind gusts occurred in a twenty-one-minute window starting at 1:28 pm CDT, with the highest being 60.41-67.1 mph gusts on the date of loss, with the weather system moving north/northeast.

- **Invoices:** Several invoices for temporary repairs were provided; however, they lacked dates and loss-specific addresses, raising concerns regarding their relevance to the subject property and date of loss. Mr. Perri acknowledged he could only assume the invoices pertained to this location.

**Analysis:**

- **Installation and Prior Repairs:** Both EDT and USBCG reports documented pre-existing issues with the roof's installation and prior repairs. The USBCG report indicates that the patches predate the date of loss and are supported by his areal imagery analysis.

- **Weather Data:** The forensic weather report from Davis Nolan Consulting Meteorologist LLC indicated likely wind gusts occurred in a twenty-one-minute window starting at 1:28 pm CDT, with the highest being 60.41-67.1 mph gusts on the date of loss, with the weather system moving north/northeast. Additionally, a broader weather data search I conducted in review indicated that on the date of loss, weather data suggests .26-43" of rain fell at this location.  The search also indicated below-average precipitation in June and July, with above-average rainfall in August, including a significant weather event on August 13, 2020, that produced 1.93" of rain. This review suggests that the rainfall on the date of loss would not be enough to produce the puddling as seen in the images provided. Furthermore, the rainfall that was noted on August 13th, 2020, over two months after the date of loss and just 9 days prior to the photos taken on August 22nd, 2020 (as the metadata indicates) would have been enough to produce such puddling as depicted on the inside in the right circumstances.

- **Wind Resistance:** TPO systems are designed to withstand wind speeds up to 90 mph per FMI 90. Given the observed installation deficiencies, it is reasonable to expect that if damaging high winds had occurred, significant portions of the membrane would have been torn off, given that this roof would be more susceptible to wind damage. The presence of accumulated debris in the seams and the absence of evidence (torn, ripped, and/or clean/cleaner surface) that would indicate exacerbated damage support the conclusion that seam issues were pre-existing.

- **Inspection Limitations:** Mr. Connell was the only member of this panel who was able to conduct an on-site inspection before the roof was allegedly replaced. This limited the panel's assessment to the information provided by both parties.

**Determination:**

The positions of the two appraisers in this matter are very different as Dan has documented in his assessment that damages due to the loss did not occur on the date in question and are merely pre-existing deficiencies due to improper installation.  Vince has presented a lot of information contained in a Google Drive folder, and from our in-person meeting is of the opinion that "if" wind had lifted the seams and water got in, then the roof should be considered.  Typically, there is an estimate along with a narrative received from both parties that coincides with one another, supporting their position.  With the information presented, one could only assume that Dan is at $0.00 in this scenario, and Vince is at $6,777,440.76.  In order to determine an ACV/RCV number to award a thorough review of the evidence presented, including photographic documentation, expert reports, weather data, and consideration of industry standards, a determination was made that the evidence does not support that the building sustained damage directly attributable to the windstorm event on June 5, 2020; therefore, I have issued a zero-dollar award based on this. Please find the attached award; I will need at least one, if not both parties, to sign and date as well as send back for a counter signature.



**Jon Linville, CPIU**

**Exact Claim Solutions, Inc.**

**IA | Appraiser | Umpire | Consultant**

**o:** 1-866-33-Exact (39228) **p:** 317-517-0245

**a:** 186 Spring Meadow Ln Greenwood, IN 46143

**w:** www.ExactClaimSolutions.com **e:** Jon@ExactClaimSolutions.com

CV Link



NOTICE: This message is covered by the Electronic Communications Privacy Act, Title 18, United States Code, Sections 2510-2521. This e-mail and any attached files are the exclusive property of Exact Claim Solutions, Inc., are deemed privileged and confidential, and are intended solely for the use of the individual(s) or entity to whom this e-mail is addressed. If you are not one of the named recipient(s) or believe that you have received this message in error, please delete this e-mail and any attachments and notify the sender immediately. Any other use, re-creation, dissemination, forwarding or copying of this e-mail is strictly prohibited and may be unlawful.